UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA JACKSONVILLE DIVISION

Case No.: 3:25-cv-00924-MMH-PDB

SYLVIA CHIMHINA,
          Plaintiff,

vs.

DELTA AIR LINES, INC., et al,
a Delaware corporation with its principal
place of business in Atlanta, Georgia,
          Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SYLVIA CHIMHINA ("Plaintiff"), appearing pro se, by and through herself, hereby sues Defendant, Delta Air Lines, Inc. et al., ("Delta" or "Defendant"), and alleges as follows: and alleges:

### I. INTRODUCTION:

1. Without turbulence or other provocation, a Delta flight attendant poured a pot of boiling water onto Plaintiff, saturating her braids, clothing, and seat, causing severe burns, neurological injuries, spinal damage, and ongoing physical, emotional, and financial harm.

2. This is an action for personal injuries, negligence, gross negligence, breach of contract, emotional distress, defamation, and violations of federal and international aviation law arising from a severe in-flight incident on August 18, 2023, during Delta Flight No. DL31, an international flight from London Heathrow Airport (LHR) to Hartsfield-Jackson Atlanta International Airport (ATL), connecting to Jacksonville International

Airport (JAX). Plaintiff purchased ticket from Defendant as part of a round-trip ticket originating in Jacksonville.

3. Plaintiff, a long-time Delta customer and frequent flyer of nearly 20 years, suffered life-altering physical injuries including burns, neurological, hip and spinal damage. Resulting in permanent physical injury, chronic pain, emotional trauma, reputational harm, and financial devastation after a Delta flight attendant negligently and recklessly poured boiling water onto Plaintiff's head, neck, back, buttocks, thighs up to her knees; saturating her braids, clothing, and seat, while she was seat-belted.

4. The incident occurred while Plaintiff was seat-belted in her assigned seat during the first beverage service. All passengers were seated except flight attendants serving beverages. Plaintiff requested orange juice for her 4-year-old child and a cup of hot tea for herself. Instead of delivering the drinks, the flight attendant turned toward her colleague, then without warning poured enough boiling water to soak Plaintiff's braids, sweater, clothing, and seat. Plaintiff screamed in pain and shock, tried to escape the scalding but was belted in airline seatbelt and, other passengers audibly gasped.

5. The incident occurred without turbulence, without provocation, and in direct violation of Delta's duty of care, safety protocols, and contractual promises to safely transport passengers and act in good faith.

6. Despite the severity of the injury, Delta failed to provide a first aid kit, pain medication, or basic burn treatment. A makeshift ice pack and expired painkillers were given; Plaintiff used her own Advil. The blankets provided to dry her seat had been on the floor near the back lavatory.

7. Two doctors responded to an in-flight medical call; only the female doctor examined Plaintiff, briefly inspecting the most painful area on her back and recommending ice and over-the-counter pain medication. Delta asked if Plaintiff wanted EMTs called upon landing; Plaintiff agreed.

8. At the plane door in Atlanta, EMTs repeated the advice, stating the burn should heal in 7-10 days. They told Plaintiff there was no need for ER transport. Plaintiff verbally stated she was not refusing care, only following their medical advice to continue her trip and purchase burn ointment if pain escalates. Plaintiff has required the care of multiple medical specialists since and as a result of this incident including neurology, spine, orthopedic, chiropractic, physical therapy. After initial attorney representation was discontinued, the Plaintiff's medical care was abruptly ended for nonpayment, non-insurance and having no attorney representation, resulting in Plaintiff's inability to properly heal, further exacerbating Plaintiff's suffering.

9. Plaintiff was humiliated being examined at the plane door in view of other passengers. A Delta representative stood nearby typing on a device but never spoke to Plaintiff or EMTs. No incident report was ever taken or provided.

10. Delta later awarded Plaintiff 4,000 SkyMiles (approx. $37 value) with an apology note. No further meaningful assistance was provided. Delta, through its insurer in September 2024, offered $1,600 cash and $600 airline credit as full compensation; Plaintiff rejected offer as insufficient. In December 2024, Defendant offered $5,000 as final full compensation for the incident; Plaintiff rejected offer. Plaintiff insisted on a thorough investigation that includes her medical records, video, incident reports, et al. Defendant's insurer Allianz refused to supply any documentation connected to the incident and supplied medical authorization form. Plaintiff provided signed medical release authorization to Delta through Allianz in December 2024 and the Defendant has been silent since.

11. Following the injury, Delta failed to provide proper medical care, failed to preserve or provide incident documentation, failed to check on Plaintiff's welfare, and made statements and determinations that have damaged Plaintiff's name, reputation, and ability to secure medical care.

12. This lawsuit seeks compensatory, punitive, and special damages, as well as equitable relief, under state law, federal law, and the Montreal Convention, to restore Plaintiff's health, reputation, and financial stability and to hold Defendant accountable for gross negligence, reckless disregard, breach of duties, and defamation.

## II. JURISDICTION AND VENUE:

4. This Court has subject matter jurisdiction under:

    a. 28 U.S.C. § 1331 (federal question)

    b. The Montreal Convention governs claims for personal injury sustained in the course of international carriage by air, as in this case the incident occurred during an international flight, where Plaintiff's ticket was a round trip from Jacksonville, Florida, to London, United Kingdom, and back. The defendant is bound by the Montreal Clause according to Defendant's international carriage policies published on www.delta.com.

    c. 28 U.S.C. § 1332 (diversity jurisdiction) because Plaintiff is a citizen of Florida and Defendant is a citizen of Delaware and Georgia, and the amount in controversy exceeds $75,000; and

    d. Supplemental jurisdiction under 28 U.S.C. § 1367 for related state law claims.

5. Venue is proper in the Middle District of Florid under 28 U.S.C. § 1391 because:

    a. Plaintiff's round-trip ticket originated and concluded in Jacksonville, Florida;

    b. Plaintiff resides in this District, Duval County, Florida;

    c. A substantial portion of the events, damages, and continuing harm occurred here;

    d. Defendant Delta Air Lines operates flights in and out of this District.

6. The Court also has jurisdiction pursuant to the Federal Aviation Act of 1958 establishing FAA safety oversight; FAA Safety Regulations mandating safety equipment, including first aid kits; the Airline Deregulation Act of 1978, 49 U.S.C. § 40101 et seq. preserving safety obligations; U.S. Tort Law negligence and gross negligence standards; and, relevant Florida tort and contract law, as Plaintiff's claims involve violations of federal safety standards applicable to commercial aircraft.

## III. PARTIES

1. Plaintiff Sylvia Chimhina is an individual and resident of Duval County, Florida.

2. Defendant Delta Air Lines, Inc. et al., is a corporation organized under the laws of Delaware with its principal place of business in Atlanta, Georgia, and is authorized to do business in Florida; operating domestic and international flights to and from Florida.

3. Defendant(s) "et al." refers to additional parties whose identities and roles may be added through discovery, including but not limited to affiliated entities and insurers.

## IV. RELATED CASE

Plaintiff is currently the defendant in EMAS Spine & Brain, et al. v. Sylvia Chimhina, Case No. 162025CC005375AXXXMA, in the Fourth Judicial Circuit in and for Duval County, Florida, in which medical providers are suing Plaintiff for unpaid bills directly resulting from injuries sustained in this incident. Plaintiff seeks a stay of that state case pending resolution of the instant federal action.

## V. FACTUAL ALLEGATIONS:

### A. Boarding and Flight Conditions:

1. On August 18, 2023, Plaintiff boarded Delta Air Lines Flight DL31 for international travel from London, United Kingdom, to Jacksonville, Florida, via Atlanta, Georgia. Plaintiff was traveling with her minor child and was seated in a standard economy seat with her seatbelt fastened. The flight was operating under normal conditions, with no turbulence or safety warnings, or disturbance in the cabin, at the time of the incident.

### B. Incident – Pouring of Boiling Water:

2. Shortly after takeoff, during beverage service, while Plaintiff was seated with her seat belt fastened, a Delta flight attendant approached Plaintiff to take her order. Plaintiff requested an orange juice for her child and a cup of hot tea for herself. The flight attendant turned back toward her service cart, facing her colleague who was also serving beverages, while Plaintiff turned toward her son to prepare his tray table.

3. The attendant turned toward her colleague at the beverage cart. Plaintiff turned toward her child to prepare his tray.

4. Without warning, instead of handing the Plaintiff a cup of tea and orange juice, the flight attendant negligently and recklessly poured boiling water directly onto Plaintiff's neck, back, buttocks, thighs, hair, and clothing. Plaintiff felt intense heat and liquid on her head, neck, back, buttocks, thighs down to her knees. The liquid was of extreme temperature and penetrated Plaintiff's clothing, causing immediate burns and excruciating pain.

5. Plaintiff screamed in pain and attempted to move away, but her movement was restricted by her seatbelt. Other passengers audibly gasped and expressed shock at witnessing both the act of boiling water being poured and Plaintiff's resulting screams. The boiling water

poured was sufficient to soak Plaintiff's clothing, braids, hair and seat, requiring blankets to dry the area.

C. Immediate Aftermath Onboard:

6. The flight attendant apologized, stating, "I am so sorry, I don't know what happened," and stood holding the pot. There was no turbulence; all passengers were seated except attendants serving beverages.

7. Plaintiff's clothing and seat were saturated with boiling water, causing immediate burns and intense pain. Plaintiff retrieved her only change of clothes from her carry-on. Flight attendant gave Plaintiff an extra blanket but the new clothes were less warm resulting in Plaintiff enduring unfavorable cold conditions for the rest of the flight. The back lavatory was used to change clothes. Blankets used to wipe Plaintiff's seat were placed on the floor opposite the back lavatory for the remainder of the flight.

8. Plaintiff asked the passenger seated on the other side of her child to watch over the child while she attended to the situation until a third flight attendant came to assist. While Plaintiff changed clothes, the third flight attendant assisted her child in building a Lego bus to keep him calm. That third attendant later asked Plaintiff to confirm her email address but did not take an incident report nor provide one to the Plaintiff.

9. Plaintiff requested a first aid kit; Delta crew said none was available. Despite FAA safety requirements mandating onboard first aid kits, Delta's crew failed to produce a proper first aid kit or appropriate burn treatment supplies. Instead, crew members provided Plaintiff with a makeshift ice pack and two expired painkillers supplied by the same flight attendant who caused the injury. No burn ointment or treatment was provided.

10. In response to an in-flight medical call, two doctors came forward. The female doctor looked only Plaintiff's back, failing to examine other burned areas. The doctor saw

redness, and advised icing and pain relief, predicting recovery in 7–10 days. The male doctor did not conduct any examination. The advice given was minimal and did not include a full assessment of potential deeper or internal injury.

11. The flight attendant who poured water on the Plaintiff told Plaintiff that she would send her 4000 miles as an apology for the incident. During the next meal serving, the same flight attendant came and whispered in Plaintiff's ear that she would not longer be able to serve the Plaintiff as she was now afraid.

12. Delta crew asked Plaintiff whether she wanted emergency medical technicians ("EMTs") to meet her upon arrival. Plaintiff expressly agreed, and EMTs were called.

D. Landing and EMT Interaction:

13. Upon landing, an inflight announcement was made for passenger to remain seated to allow Plaintiff and her child off the plane first.

14. EMTs met Plaintiff at the aircraft door, asked Plaintiff to pull up her t-shirt and briefly looked at the Plaintiff's back while the rest of the passengers disembarked spectating. No thorough examination of the impacted areas was conducted. A Delta employee in uniform stood nearby, typing into a handheld device, but did not speak to Plaintiff or EMTs in the presence of Plaintiff.

15. EMTs echoed the 7–10 day recovery estimate and advised to continue her travels and Plaintiff to seek treatment if pain worsened. They asked her to sign a refusal-of-care form; Plaintiff explained to EMTs that she was not refusing care and was signing the document they presented in agreement with their advice, which matched the female doctor's onboard assessment. Plaintiff sought to minimize further trauma to her child who was traveling with her and was not yet aware of the full extent of her injuries.

E. Escalation of Pain and Early Medical Treatment:

16. The pain escalated within hours. By the following night, Plaintiff's mobility was visibly impaired and she was struggling to perform basic movements without pain.

17. In the days following the incident, Plaintiff sought care from a Pharmacy, Urgent Care and through repeated visits to emergency rooms. It was only after continued symptoms and visible mobility limitations that an ER physician referred Plaintiff to a neuro and spine specialist. Imaging and X-rays revealed extensive internal injuries, including spinal and neurological damage.

F. Communication with Delta and Allianz:

18. Upon landing in Jacksonville, Florida, Plaintiff received an email from Delta apologizing for the incident and notified Plaintiff that 4000 miles (approx. $37 in value) had been added to her SkyMiles account as compensation for the incident as promised by the flight attendant who poured boiling water on her.

19. Within this first week, Plaintiff contacted Delta Customer Service online to report her extreme pain and request assistance. Delta's email response stated someone would contact her within 30 days. Delta has never followed up to check on Plaintiff's wellbeing, despite its public commitment to care for passengers and its practice of tracking and resolving far less serious customer complaints, such as lost baggage.

20. Plaintiff also contacted Allianz Global Assistance, Delta's travel insurance partner to report the injury and explain that she did not yet know the full extent of her injuries; they reimbursed minor ointment and painkiller costs from the first week only. Allianz provided no further assistance or compensation.

G. Montreal Convention Advance:

21. Under the Montreal Convention, which governs international air travel, carriers are obligated to provide an immediate advance of approximately $20,000 USD to passengers suffering bodily injury, without prejudice to further claims, to help reduce financial strain while investigation is conducted. Delta's own international carriage policy states that it is bound by the Montreal Convention but will issue such advances "at its discretion." Delta has refused to provide any advance despite clear liability for Plaintiff's injuries.

22. Plaintiff retained counsel to help facilitate access to medical treatment and communication with Delta.

H. Long-Term Medical and Life Impacts:

23. As a direct and proximate result of Delta's negligence and failure to provide appropriate care, Plaintiff continues to suffer from chronic pain and swelling, reduced mobility and range of motion, and inability to resume normal activities.

24. Due to the injuries, Plaintiff was forced to relocate to a home more suitable for mobility limitations. Plaintiff's parent traveled from London on unpaid leave to provide care for Plaintiff and her child and the other parent, had to forego retirement to now assist Plaintiff financially. Plaintiff has had to rely on neighbors for cooking, cleaning, and daily needs.

25. Plaintiff's capacity to work declined sharply; her business failed to maintain growth trajectory, suffered revenue loss, lost contracts, employee terminations and lost opportunities due to her inability to manage operations. Plaintiff has been unable to pay contractual business and personal obligations, damaging professional relationships.

26. EMT bills, medical collections, and ongoing litigation from providers have damaged Plaintiff's credit and subjected her to daily collection calls.

27. As a direct result of witnessing the incident and its aftermath, Plaintiff's minor child has experienced ongoing emotional distress, behavioral changes, and increased anxiety. The roles within the household have, at times, reversed — with the child assuming responsibilities beyond his years due to Plaintiff's physical limitations. Plaintiff's reduced availability has altered the child's daily routines, lifestyle, and access to previously planned experiences, including Plaintiff personally teaching him tennis and swimming, traveling internationally together, and spending summers in London with extended family. These losses have disrupted the child's sense of safety, stability, and joy, and may have lasting effects into adulthood. The full extent of these impacts may not be realized for years.

I. Lack of Transparency and Bad Faith:

28. Delta has refused to provide Plaintiff with any incident report, any video or photographic evidence from the aircraft (if such exists), or the results of the internal "first investigation" that led to Delta's initial offer to settle Plaintiff's claim for no more than $1,600 cash and $600 airline credit maximum settlement figure.

29. The injury and Delta's subsequent conduct have also caused significant reputational harm. Delta's representatives and/or insurance agents have stated, in substance, that they do not see a causal connection between the incident and Plaintiff's extensive injuries, implying fabrication of injury. Plaintiff believes, on information and belief, that Delta's communications may have caused her former attorneys to drop representation and her medical providers to pursue her personally for payment. Defendant's conduct has implied Plaintiff is fabricating injuries, damaging her reputation and limiting her access to much needed medical care.

30. Plaintiff has been a loyal Delta customer for nearly 20 years, often purchasing airfare exceeding the amount Delta offered to settle this matter. Delta's treatment of Plaintiff following a severe, life-altering injury stands in stark contrast to the care and attention it

extends to non-injury passenger complaints, constituting both a breach of its duty to safely transport passengers and a breach of good faith.

31. Plaintiff was and continues to be in need of the care of multiple medical specialists, including but not limited to neurology, orthopedics, chiropractic care, pain management, and physical therapy. Due to Delta's refusal to accept responsibility for the injuries caused by its employee, and the resulting nonpayment of medical bills, Plaintiff's treatment was prematurely and abruptly discontinued. As a result, Plaintiff has been left without critical ongoing care, her injuries remain incompletely diagnosed, and the full extent of her permanent impairments is not yet known.

## VI. COUNTS:

1. Count I – Negligence

2. Count II – Gross Negligence / Reckless Disregard

3. Count III – Liability Under the Montreal Convention

4. Count IV – Negligent Infliction of Emotional Distress

5. Count V – Breach of Contract / Breach of Duty of Good Faith

6. Count VI – Violation of Federal Aviation Act & FAA Safety Regulations

7. Count VII – Defamation / Reputational Harm

## VII. DAMAGES:

As part of its only written acknowledgment of the incident, Delta awarded Plaintiff 4,000 SkyMiles, valued at approximately $37, accompanied by a brief "we are sorry" note. This token gesture underscores Defendant's disregard for the severity of Plaintiff's injuries and losses.

Plaintiff seeks:

1. Compensatory damages – medical costs (past and future), lost income and earning capacity, relocation expenses, business losses, pain and suffering, emotional distress, credit damage, reputational harm.

2. Punitive damages – to punish gross negligence, reckless disregard for passenger safety, malice and bad faith practices.

3. Special damages – out-of-pocket expenses, litigation costs.

4. Equitable relief – stay of related state case, removal of derogatory credit entries, cessation of collections, reinstatement of medical care, immediate Montreal Convention advance of $20,000.

5. Emotional distress damages for Plaintiff's minor child, including current and future impacts resulting from witnessing the incident and its consequences.

6. All other relief deemed just and under state, federal, and international law.

## VIII. PRAYER FOR RELIEF:

WHEREFORE, Plaintiff respectfully requests judgment in her favor against Defendant, jointly and severally, for:

1. Compensatory damages in an amount to be determined at trial;

2. Punitive damages;

3. Special damages;

4. Equitable relief as set forth above;

    a. Immediate payment of $20,000 advance under the Montreal Convention;

    b. Removal of adverse credit entries and cessation of collection activities;

    c. Reinstatement of medical care;

    d. Stay of related state case;

5. Award damages for the emotional and psychological harm suffered by Plaintiff's minor child as a result of witnessing the incident, in an amount to be determined at trial.

6. Pre- and post-judgment interest;

7. Costs of this action including attorneys' fees; and

8. Such other relief as the Court deems just and proper.

## IX. DEMAND FOR JURY TRIAL:

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

_____
Sylvia Chimhina
1906 Promenade Way, Apt 2103
Jacksonville, FL 32207
Pro Se Plaintiff
rusilc@gmail.com
860-834-0520
August 13, 2025